UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE ENTROCASCO, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | **1:16-cv-001263 GSA** <br><br> **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF MICHELLE ENTROCASCO** |

I.  **INTRODUCTION**

Plaintiff, Michelle Entrocasco ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

i

matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 23 and 25). Upon a review of the entire record, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court AFFIRMS the agency's disability determination and DENIES Plaintiff's appeal.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

Plaintiff filed an application for SSI alleging she was disabled beginning January 1, 2012, due to asthma and scoliosis. AR 86-96; 107. The parties agree that the Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 23, pg. 2 and Doc. 25, pg. 2). Therefore, this appeal is a review of Administrative Law Judge Andrew Verne's ("ALJ") decision issued on April 10, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 12-20.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. Relevant portions of the record will be referenced in the discussion where appropriate. AR 161-238.

## III. THE ISSUES PRESENTED

Plaintiff argues that the ALJ: (1) improperly concluded that her degenerative disc disease was a non-severe impairment at step two; (2) failed to properly evaluate Plaintiff's testimony; and (3) committed legal error by not addressing the testimony of several lay witnesses. (Doc. 23, pgs. 12-20). She requests that the case be remanded for further consideration of these issues. (Doc. 23, pgs. 12-20). In opposition, the Commissioner argues that the ALJ: 1) properly found Plaintiff's disc disease was a non-severe impairment; 2) properly discounted Plaintiff's testimony; and 3) any errors committed in failing to address lay witness testimony are harmless because Plaintiff has not produced any testimony that would have altered the outcome of the ALJ's decision. As such, the ALJ's decision should be affirmed. (Doc. 25, pgs. 13).

///

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 8 and 10).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

## IV. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
> 42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work[4]; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

## V. SUMMARY OF THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 16, 2012. AR 14. At step two, the ALJ identified scoliosis and asthma as severe impairments, however he

---

[4] Residual functional capacity captures what a claimant "can still do despite [his of her] limitations." 20 CFR § 416.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

also determined that Plaintiff's mild diffuse bulging disc, substance addition, and depression were not severe impairments. AR 14-16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 16. However, the ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to: lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk for a total of six hours in an eight-hour workday; and frequently climb ramps, stairs, ladders, ropes and scaffolds; in addition, she could balance, stoop, kneel, and crouch. AR16-20. In reaching this conclusion, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. AR 16-18.

Given the above, at step four, the ALJ found Plaintiff could perform her past relevant work as a housekeeper. AR 19-20. Alternatively, at step five, the ALJ considered the testimony of a vocational expert and concluded that other jobs also existed in significant numbers in the national economy that Plaintiff could perform, including working as a dishwasher, a laundry worker, and a hospital housekeeper. AR 20. The ALJ therefore concluded Plaintiff was not disabled. AR 20.

## VI.     THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VI.     DISCUSSION
**A. The ALJ's Decision to Find Plaintiff's Degenerative Disc Disease a Non-Severe Impairment is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ failed to find her degenerative disc disease a severe

4

impairment at step two of the sequential evaluation process. (Doc. 23, pgs. 12-15). Defendant counters that the ALJ's step two determination was supported by substantial evidence. (Doc. 25, pgs. 4-6).

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit [the claimant's] physical and mental ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings - the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987). Further, the ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone was sufficiently severe. 42 U.S.C. § 423(d)(2)(B). The combined effect "shall be considered throughout the disability determination process. *Id*. The adjudicator's role at step two is further explained by SSR 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

Here, the ALJ identified Plaintiff's scoliosis and asthma as severe impairments. AR 14. However, the ALJ determined that Plaintiff's degenerative disc disease was non-severe.[5] AR 12. He reasoned as follows:

> I find that the claimant's mild diffuse bulging disc … [is] not [a]"severe" impairment within the meaning of the Social Security Act and regulations because there is no evidence that th[is] condition cause[s] more than a minimal effect on the claimant's ability to work. … A magnetic resonance imaging (MRI) of the lumbar spine revealed diffuse bulge of the L1-L2, L2-L3, L3-L4 and L4-L5 levels and mild diffuse bulge of the T12-L1 and L5-S1 levels…and [sic] MRI of the cervical spine revealed left paracentral herniation of C4-C5 disc and mild diffuse bulge of C2 through C7 discs…However, there was no significant central canal or neural foraminal narrowing. In addition, physical examination showed normal gait and station with normal ranges of motion and full motor strength in all extremities…Based on the medical record as a whole there is little if any evidence of functional limitations resulting from these impairments and the claimant has not required [sic] any significant treatment for these conditions.

AR 14.

Plaintiff asserts that the ALJ's analysis is insufficient because the ALJ relied on Dr. Rush's (a consultative examiner's) findings. She claims this was improper because Dr. Rush is not a specialist and his examination was completed prior to the completion of the MRI tests, so he did not review any objective medical tests prior to his evaluation. Further, she argues the non-examining physicians who the ALJ also references later in the opinion relied on Dr. Rush's evaluation to formulate their recommendations. Plaintiff contends that because no medical professional examined the MRI the ALJ used his own lay opinion to interpret the results, which is improper. She further contends that the ALJ's interpretation of the records was also factually incorrect and incomplete as he omitted crucial findings of the MRI. Specifically, he omitted the fact that the disc bulges were indenting in the thecal sac (the sheath surrounding the spinal cord) at L2-3; L3-4; and L4-5, and disc bulges were indenting on bilateral nerve roots at L2, L3 and L4. AR 167-169. She also contends that that the ALJ's analysis fails to reference that the disc bulge at

---

[5] As previously mentioned, the ALJ also determined that Plaintiff's substance abuse and her depression were non-severe impairments. AR 14-15.

6

C4-C5 was three times the size of the other bulging discs. AR 169. (Doc. 23, pgs. 12-15).

Notwithstanding Plaintiff's arguments, a review of the record reveals that the ALJ's determination that Plaintiff's degenerative disc disease is a non-severe impairment is supported by substantial evidence. First, Plaintiff correctly points out that Dr. Rush is not a specialist, however, he performed an in-person examination of Plaintiff's musculoskeletal system and took measurements of Plaintiff's range of motion which formed the basis of his assessment of her abilities. He found her cervical spine, dorsolumbar, and straight leg raising to all be within normal limits. AR 163. His neurological examination also revealed normal motor strength, coordination, and gait. AR 164. It was these test results and measurements that formed the basis of the ALJ's finding that the impairments did not significantly affect Plaintiff's ability to perform work activity. AR 14. Additionally, Plaintiff's arguments that no doctor examined the MRI tests, and that the ALJ omitted important aspects of the results, is also misplaced. The ALJ's summaries of the results were accurate reflections of Dr. Wagner's (the radiologist who performed the tests) ultimate impressions. Compare AR 14 with AR 168;170.  Finally, Dr. Glenn Bugg, a state non-examining physician rendered opinions in April and August 2013, a full year after the date of the MRI studies, and he concluded that Plaintiff could lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently; she could stand, walk or sit for up to six hours in an eight-hour workday; and although she could not climb ladders, ropes or scaffolds, she was unlimited in her abilities to balance, stoop, kneel, or crouch. She also had no manipulative or visual limitations. AR 203; 216-223. Dr. Bugg's assessment was made while reconsidering the initial denial of Plaintiff's disability application and after additional evidence, including her MRI, had been submitted.  He specifically noted, "GOOD ROM at EXAM with MRI's showin[g] mild diffuse buldging thru-out [sic] spine." AR 34-35; 51; 218; 227. Therefore, a doctor did examine the MRI results and the ALJ did not give a medical opinion based on his own lay opinion. Because there is objective evidence supporting the ALJ's analysis, his step two finding that Plaintiff's degenerative disc disease is a non-severe impairment is supported by substantial evidence.

**B. The ALJ Properly Discredited Plaintiff's Subjective Complaints**.

Plaintiff further argues that the ALJ's credibility determination was improper because the ALJ did not provide clear and convincing reasons for rejecting her testimony. (Doc. 23, pgs. 16-

18). The Commissioner contends that the ALJ's credibility determination was proper and the decision is supported by substantial evidence. (Doc. 13, pgs. 6-10).

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[6] Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See *Thomas*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

---

[6] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016) and 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Although Social Security Rulings "do not carry the force of law," they "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
   As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, 862 F. 3d 987, 995 n.5 (9th Cir. 2017) see also *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p became effective after the issuance of the ALJ's decision and the Appeals Council denied review in the instant case. It is unclear whether SSR 16-3 applies retroactively. However, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective complaints in this case meets the guidelines set forth in both SSR 16-3p and its predecessor, SSR 96-7p.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493; *Smolen v. Chater*, 80 F.3d 1273,1283-1284 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Here, the ALJ noted that Plaintiff "complained of low back pain due to scoliosis." AR 18, 107. However, as explained above, he noted that physical examinations revealed normal gait with some levoscoliosis, but with normal ranges of motion and full muscle strength in the upper and lower extremities. AR 18; 162-164. In doing so, he found that the limiting effects of Plaintiff's subjective complaints were greater than expected in light of the objective evidence of record. Consideration of the medical evidence is a permissible basis to find her not credible. AR 18; *See* 20 C.F.R.§ 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms …."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

In addition to the medical evidence, the ALJ noted that despite her allegations of pain, documents revealed that Plaintiff only had conservative treatment for her impairments. AR 18. Here, Plaintiff received medications for her pain. However, as the ALJ noted, she did not seek out a second opinion for possible surgical intervention, she did not attend physical therapy, and she did not use an assistive device. AR 18; 161; *Warre v. Com'r of Soc. Sec.*, 439 F. 3d 1001, 1005 (9th Cir. 2006) (impairment amenable to control is not disabling); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v*

*Sullivan*, 947 F.2d 341, 346-347 (9th Cir. 1991) (factors to evaluate credibility include medication effectiveness); *Fair v. Bowen*, 885 F.2d at 597; 603-604 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility). In fact, although Plaintiff argues that she sought out a referral to a pain management specialist (AR 186), the note she refers to actually indicates that Plaintiff was seeking a referral for an MRI. As discussed earlier, several doctors indicated the MRI revealed severe scoliosis with mild degenerative disc disease. While there are progress notes outlining Plaintiff's treatment, the majority of them reveal she was getting prescriptions refilled with no other discussion of more aggressive alternative therapies or surgeries. AR 177-193; 229-236. Further, while Plaintiff indicated she visited the hospital a few years ago to get an opinion about her back (AR 158-260), there is no documentation of that visit in the medical record. In fact, according to Plaintiff's testimony, it appears that hospital staff gave her a list of specialists to contact, however it is unclear if she ever followed-up with any of those doctors which supports the ALJ's findings that she did not pursue additional treatment. The exchange with the ALJ went as follows:

Q: You went to the hospital?

A: Uh-huh.

Q: And what happened? They just evaluated you?

A: Yeah.

Q: Did some --- they did X-rays?

A: They just gave me a paper with a list of doctor's names, and told me to call them to see if I could get in there.

Q: And did you do that?

A: I did, I don't know. Like, everyone tells me that they can't do – nobody will touch me. The chiropractors won't touch me. Nobody will touch me. I can't get help for it. And then my family members are telling me to look in San Francisco, that there's like the best people there that could help, that know about this. And I look on line, and I can't even find people that have it as bad as I do …

AR 261.

Contrary to Plaintiff's assertions, it appears that she looked on-line for assistance but has not been evaluated by a specialist to assess her case. Moreover, Plaintiff testified that she stopped seeing Dr. Mariano, her treating physician, in the beginning of 2014 (for over a year) because he was making her addicted to pills. AR 255. At the hearing in February 2015, Plaintiff indicated she had not seen another doctor since terminating her relationship with Dr. Mariano in the beginning of 2014. AR 255; 259-260. Instead, she reported that she has been taking Ibuprofen to treat her pain which undercuts Plaintiff's current arguments. AR 18; 256. Finally, although Plaintiff reported an inability to perform certain tasks such as walking, lifting, and sitting (AR 263-266), the ALJ noted that at the time of her physical consultative examination, she reported that she experienced pain, but did not identify any limitations as a result of the pain. AR 17-18; 161. These findings are supported by Dr. Rush's examination notes and supports the ALJ's findings.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. Although the Plaintiff has offered other interpretations of the evidence regarding her testimony, it is not the role of the Court to re-determine Plaintiff's credibility *de novo*. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Accordingly, the ALJ's credibility determination was proper.

### C. The ALJ's Failure to Address Lay-Witness Testimony was Harmless Error.

Plaintiff contends the ALJ failed to properly address the testimony of six lay witnesses. Specifically, Plaintiff argues her attorney advised the ALJ that he had submitted five additional witness statements for consideration and the ALJ assured Plaintiff that he had them in the record (AR 241) when in fact they had not been submitted. Further, the ALJ did not provide specific, germane reasons for rejecting the testimony of Plaintiff's live-in boyfriend, Terry Honeycutt (AR 135-143) who submited a witness statement. She argues this constitutes reversible error. (Doc. 23, pgs. 18-20). Defendant asserts that while the ALJ did not specifically address the third party statements, the error was harmless. (Doc. 25, pgs. 10-13).

Lay witness testimony as to a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence which the Commissioner must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Dodrill*, 12 F. 3 at 919. "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

Plaintiff's argument that the case should be remanded for the ALJ to consider five witness statements is not persuasive since she acknowledges that the identity of the witnesses are not known at this time, and she has not submitted any witness statements for this Court to consider.[7] Given the absence of this evidence, the Court cannot find that the ALJ committed error, or that any error was not harmless.

Plaintiff also contends that the ALJ did not address the testimony of Plaintiff's live-in boyfriend, Terry Honeycutt. AR 135-143. Although Mr. Honeycutt stated that Plaintiff was in constant pain and could not move sometimes, the ALJ noted that Plaintiff, "can do all personal needs on her own," that she could dress the baby, and could walk the length of four houses. AR 15; 136; 145; 149. He also noted that her boyfriend reported Plaintiff could sit and fold clothes. AR 15; 136; 140.

Here, the Commissioner concedes that the ALJ did not specifically address Mr. Honeycutt's statement in the opinion, but that the error was harmless. The Court agrees. A review of this statement reveals it does not describe any limitations beyond that which Plaintiff described. More particularly, the statement references Plaintiff's daily struggle with pain; her problems lifting, squatting, bending standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks. AR 135-142. Plaintiff testified to these symptoms herself and the ALJ rejected Plaintiff's testimony because he found the statements were not credible. AR 16-18; 144-152; 263-274. As explained in *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012):

Where lay witness testimony does not describe any limitations not already described by the

---

[7] The witness statements were also not submitted to the Appeals Council as part of the appeal.

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.
*Id*. at 1117.

Because the ALJ discussed Plaintiff's testimony at length and rejected her testimony regarding the extent of her limitations, the same reasons apply equally to Plaintiff's boyfriend's statement. Thus, any error in not expressly rejecting Mr. Honeycutt's witness statement is harmless. *Molina v. Astrue*, 674 F.3d at 1121.

## VII.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on the correct legal standards. Accordingly, this Court DENIES Plaintiff's appeal. The Clerk of this Court is DIRECTED to enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security and against Michelle Entrocasco, and to close this action.

IT IS SO ORDERED.

Dated: **May 22, 2018**　　　　　　　　　　**/s/ Gary S. Austin**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

13